FILED
2016 May-13  PM 02:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| , | ) |
| | ) |
| v. | ) Case No: 6:15-cr-390-KOB-SGC |
| | ) |
| GERALD WIDEMAN, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on the defendant's "Motion to Suppress Evidence" (doc. 14) and "Motion in Limine to Prohibit Introduction of Certain Evidence" (doc. 15). The magistrate judge filed a report and recommendation on March 28, 2016 (doc. 29), recommending that the court deny the motion to suppress (doc. 14); deny the motion in limine as to the drugs seized from the Wideman Road property; deny the motion in limine as to the search warrant and supporting affidavit; and grant the motion in limine as to the sexual materials and devices seized from the Wideman Road Property (doc. 15). The defendant filed objections to the magistrate judge's report and recommendation. (Doc. 31).

The court has carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation, the defendant's objections, and the transcript and exhibits from the hearing on March 8, 2016. The court SUSTAINS the defendant's objections as to the validity of the *ground* search, but OVERRULES his objections based on the aerial observations. As explained below, because the court does not have enough information in the record to rule on the motions in their entirety, the court will set a hearing limited to the issue set out below. At this point, the court ADOPTS part of the magistrate judge's report and ACCEPTS

1

some of her recommendations **with the following MODIFICATIONS**:

## WARRANTLESS AERIAL OBSERVATION

The court ADOPTS the magistrate judge's report in its entirety and accepts her recommendation as it relates to the validity of the warrantless aerial observation. The court agrees with the magistrate judge's findings of fact on this issue, and concurs with her finding that "[f]or the purpose of determining the lawfulness of the warrantless aerial observations of Captain Bailey and his co-pilot, whether the marijuana plants were in an open field or within the curtilage of the Wideman Road property is irrelevant" based on the Supreme Court's holdings in both *California v. Ciraolo*, 476 U.S. 207 (1986) and *Florida v. Riley*, 488 U.S. 45 (1989). (Doc. 29 at 9). The court finds that the aerial observation of the marijuana plants on Wideman's property was not a search subject to Fourth Amendment protection and did not require a warrant**.**

## WARRANTLESS GROUND SEARCH OF WIDEMAN'S PROPERTY

Contrary to the magistrate judge's report, the court finds that the initial warrantless ground search of the curtilage of Wideman's property did violate his Fourth Amendment rights. As support for the court's finding on this issue, it relies on the following additional facts and law not included in the magistrate judge's report.

**ADDITIONAL FACTS FROM TRANSCRIPT OF HEARING ON MARCH 8, 2016:**

(1) When Officer Wiggins was "out on the public road before [he] took Mr. Wideman into custody on the adjacent property, [he] could not see any marijuana." (Doc. 30 at 119-120).

(2) Officer Wiggins, "acting only upon what the helicopter people had seen from . . . 500 feet or above," believed he and the other officers had probable cause to conduct the ground search "into Mr. Wideman's yard" to verify the marijuana. (Doc. 30 at 121).

(3) Before the ground officers arrived at the Wideman property, Officer Bailey, the pilot who conducted the aerial observation, flew below 500 feet after observing the marijuana on the property to look for "any obstacles or dangers to any law enforcement agent that may come" on to the property.  Officer Bailey also testified that he was making sure that no one "cut the marijuana down and [tried] to leave with it."  (Doc. 30 at 53).

(4) Officer Bailey, while watching the property from the air, saw a vehicle pull into a residence south of Wideman's residence and turn around and watch the helicopter.  He then saw the vehicle pull into the driveway of Wideman's residence; saw a person get out of the vehicle, walk around the mailbox, and get back into the vehicle; and observed the vehicle pull into a residence on the east side of Wideman Road, get out of the car, and enter that residence.  (Doc. 30 at 60).

(5) Officer Bailey reported to the ground officers the information about the vehicle and the whereabouts of the person driving it.  (Doc. 30 at 60).  He testified that the person in the car did nothing dangerous in way and that "[n]othing else happened" while he was "staying on station."  (*Id*. at 60, 70).

(6) Officer Bailey testified that he saw the ground officers approach from the north and that he was in constant radio contact with them.  Officer Bailey positioned the helicopter in a way to tell the ground officers where to locate the marijuana plants, "and then they parked in the area and walked to it."  (Doc. 30 at 61).

(7)  Officer Bailey stated that approximately forty minutes passed between the time he spotted the marijuana and the time the ground officers arrived on the scene.  (Doc. 30 at 61).

(8) At some point before Officer Wiggins arrived on the Wideman property, he, and other

3

officers, detained Mr. Wideman on a neighbor's property.  Officer Wiggins then transported Mr. Wideman from the neighbor's property to his own residence, where Officer Wiggins placed him in a chair in handcuffs.  (Doc. 30 at 113, 117-18, 120).

(8) Before Officer Wiggins arrived on the scene at Wideman's residence, other officers were already searching for marijuana plants on Wideman's property.  (Doc. 30 at 110).

(9) Officer Wiggins "pulled into [Wideman's] driveway and exited the vehicle that [he was] in and walked beside the house and asked where are the plants."  He said he did not remember who but someone "pointed toward them."  Mr. Wiggins testified that "as you go in the driveway, you look off to the right, and [he] could see the edge of the plants at that point."  (Doc. 30 at 110).

(10)  Officer Wiggins testified that, before the warrant arrived, he and Agent Buchanon went riding around the property on a "gator-type vehicle" to "look for any additional marijuana patches in the outlying areas."  He claimed that, to ensure the plants were not destroyed, he entered the property and kept a "close eye contact" on the plants. He also stated that he went on the property to "check to make sure no one else [was] also at the premises or on the property for officer safety purposes" and that he did a "safety sweep to make sure no one else [was] around." (Doc. 30 at 111-112).

(11) When asked "And to your knowledge, was there anybody else [other than Mr. Wideman] on the property after officers had secured it that actually posed a threat to destruction of the evidence or to the officers?" Officer Wiggins replied "No. We were locating evidence." (Doc. 30 at 121).

4

**LAW REGARDING THE GROUND SEARCH**

The person who asserts the police violated his Fourth Amendment rights has the burden of alleging and establishing his legitimate expectation of privacy and the unreasonableness of the search.  *United States v. Bachner*, 706 F.2d 1121, 1125 (11th Cir. 1983).

Just because the backyard where officers locate marijuana was within the curtilage of the house does not mean that "it receives protection from all police observation."  *See United States v. Garrott*, 745 F. Supp. 1206, 1213 (M.D. Ala. 2010) (citing *United States v. Jenkins*, 124 F.3d 768, 773 (6th Cir. 1997)).  The Supreme Court held that curtilage is "not necessarily protected from inspection that involves *no physical invasion*."  *Riley*, 488 U.S. at 449 (emphasis added).  Generally, the police may see what may be seen from a "'*public* vantage point'" where they have a right to be.  *Id*. (quoting *Ciraola*, 476 U.S. at 213) (emphasis added).  But visual inspection from a lawful vantage point is very different from a physical intrusion into the curtilage of a house to search for evidence.  *Garrott*, 745 F. Supp. At 1213.

Officers may approach a home for a legitimate police reason "'*unconnected with a search*'" of the premises. *United States v. Jackson*, 618 F. App'x 472, 476 (11th Cir. 2015) (quoting *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006)) (emphasis added).  However, if officers enter someone's property, including the curtilage, to gather evidence, they have engaged in a search for Fourth Amendment purposes.  *United States v. King*, No. 15-12076, 2015 WL 9487796 *1 (11th Cir. Dec. 30, 2015) (citing *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013)).  A warrantless search is presumptively unreasonable, but officers may conduct a warrantless search of a residence *under exigent circumstances.  King*, 2015 WL 9487796 at *1.  However, "no amount of probable cause can justify a warrantless search or seizure absent

5

'exigent circumstances.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971).

One exception to the warrant requirement applies when "'the exigences of the situation' make the need of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 131 S. Ct. 1849 (2011). The need to "'prevent the imminent destruction of evidence'" is a sufficient justification for a warrantless search. *Id*. at 1856 (citations omitted). Moreover, a protective sweep, which is most often incident to executing an arrest warrant, is an independent ground for a warrantless search. However, "[a] protective sweep may also be undertaken without an arrest warrant, *so long as the officers are lawfully* within the premises due to, for example, the existence of exigent circumstances." *United States v. Timmann*, 741 F.3d 1170, 1181 (11th Cir. 2013) (emphasis added).

When the police step into the curtilage of a home without a warrant and no exceptions to the warrant requirement exist, that search violates the Fourth Amendment. *Oliver v. United States*, 466 U.S. 170, 180 (1984).

**DISCUSSION**

In this case, no dispute exists that the marijuana was located within the curtilage of Mr. Wideman's home. Because no one could see the marijuana from the public road, the court finds that Mr. Wideman had a legitimate expectation of privacy in the curtilage of his home where the police conducted the warrantless *ground* search and located the marijuana plants.

The court finds that the *ground* search of the curtilage of Mr. Wideman's property was unreasonable and violated his Fourth Amendment rights. Several officers, prior to Officer Wiggens, entered the curtilage of Wideman's property without a warrant for no other reason but

to search and verify that marijuana was on the property based on the aerial inspection.  Officer Wiggins testified that he believed the ground search was valid based on the probable cause from the aerial observation.  Although the officers would have probable cause from the aerial inspection alone to obtain a search warrant, that probable cause did not give the officers the right to enter Wideman's property and conduct a warrantless search without the existence of some exigent circumstance.  *See Coolidge*, 403 U.S. at 468.

No exigent circumstances existed in this case.  Although Officer Wiggins claimed that he entered the property to make sure no one destroyed the marijuana and to conduct a protective sweep for the officer's safety, neither of these reasons pass muster.  First Officer Wiggins was not the first officer on the scene, and no evidence exists to explain the other officers' circumstances for entering the curtilage of Mr. Wideman's property and searching for the marijuana.  Also, Officer Bailey and his co-pilot who conducted the aerial observation observed the marijuana from the air for approximately forty minutes to make sure that no one was on the property to destroy the marijuana; the police took Mr. Wideman into custody after Officer Bailey reported to the ground officers that someone, who later was known to be Mr. Wideman, drove a vehicle into the driveway of Wideman's property and then drove to a neighbor's driveway and went into that house; the aerial search revealed no other people on the property attempting to destroy the marijuana or who posed a threat to the officers' safety; and Officer Wiggins admitted that he was "locating evidence" even after no one posed a threat to the destruction of the marijuana or the officer's safety.  As such, no need existed for the officers to conduct the ground search of the curtilage of Mr. Wideman's property to prevent the imminent destruction of evidence.

Moreover, Officer Wiggins' claim that the ground  search of the property was a "safety sweep" lacks merit.  Officer Wiggins could conduct a protective sweep without an arrest warrant, "so long as the officers [were] *lawfully within the premises* due to, for example, the existence of exigent circumstances."  *See Timmann*, 741 F.3d at 1181 (emphasis added).  However, in this case, the officers were not lawfully on Wideman's property because no exigent circumstance existed.

 The court finds that no reason *unconnected* to the police wanting to search for and verify the marijuana on the property existed for the officers to physically intrude into Mr. Wideman's property without a warrant.  The court finds that where Officer Wiggins was standing when he purportedly saw the marijuana in plain view is of no consequence because, by the time Officer Wiggins arrived on Wideman's property, the constitutional damage of the warrantless search of Mr. Wideman's property had already been done by the other officers on the scene before him. The court finds that the warrantless ground search of the curtilage of Mr. Wideman's property violated his Fourth Amendment right against an unlawful search.

**VALIDITY OF THE WARRANT AND EXCEPTION TO THE EXCLUSIONARY RULE**

Even though the ground search violated the Fourth Amendment, the search warrant in this case could still be valid if the independent source doctrine applies. The independent source doctrine serves as an exception to the general exclusionary rule that all evidence seized during an unlawful search must be suppressed.  *Murray v. United States*, 487 U.S. 533, 542 (1988).  Under this exception, "evidence obtained from a lawful source that is independent of any Fourth Amendment violation is admissible, the rational being that the exclusionary rule should not put the government in a worse position than if the constitutional violation had not occurred."  *United*

*States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012).

When a police officer makes an initial warrantless entry that violates the Fourth Amendment and then relies in part on his observations during that entry to obtain a search warrant, the Eleventh Circuit applies a two-part test to "determine whether the evidence seized during the execution of the warrant was discovered independent of the initial entry and is therefore admissible regardless of whether that first entry violated the Fourth Amendment." *Noriega*, 676 F.3d at 1260. First, the court should "excise from the search warrant affidavit any information gained during the arguably illegal initial entry and determine whether the remaining information is enough to support a probable cause finding." If so, the second step is to determine whether the decision to seek the warrant was "prompted by" what he observed during the arguably illegal entry. *Id*. (citing *Murray*, 487 U.S. at 542). To determine whether an officer's decision to seek a warrant is prompted by what he observed during the initial entry, the court should determine whether the officer would have sought the warrant absent the unlawful initial entry. *Noriega*, 676 F.3d at 1260-61; *see also United States v. Albury*, 782 F.3d 1285, 1293 (11th Cir. 2015).

Based on the record currently before the court, it does not have enough information to make findings regarding whether the independent source doctrine applies in this case. Therefore, the court SETS a HEARING on **Tuesday, June 7, 2016 at 10:00 am** in Courtroom 8 for the *limited purpose* of the parties presenting any evidence regarding the applicability of the independent source doctrine in this case.

DONE and ORDERED this 13th day of May, 2016.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE